IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL ARTURO GARCIA-ASCANIO | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:19-cv-1847 |
| v. | § § | JURY |
| SPRING INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant. | § § | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES</u>**

COMES NOW, DANIEL ARTURO GARCIA-ASCANIO ("Garcia" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this Response in Opposition to the Motion for Summary Judgment filed by Defendant SPRING INDEPENDENT SCHOOL DISTRICT ("Defendant") [Dkt. No. 26]. For the reasons stated below, the Court should deny Defendant's Motion for Summary Judgment.

### I. INTRODUCTION AND FACTUAL BACKGROUND

1. This action is brought under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq*. Garcia alleges violations of USERRA by Defendant (and its agents/employees under *respondeat superior*). Garcia, as a United States military servicemember, is afforded certain protections under USERRA. Defendant committed prohibited acts when it discriminated against Garcia and took adverse employment action against him because of (i) his status as a servicemember; and (ii) his actions to enforce the protections afforded to him under USERRA.

2. Defendant's recitation of the factual background presented in its Motion for Summary Judgment [Def. MSJ, Dkt. No. 26, at 1-7] is mostly accurate with regard to dates of certain events. However, Defendant's version of the events is rife with inaccurate and conclusory statements, especially those concerning the Defendant's actions against Garcia and the circumstances surrounding his termination. A more complete version of the events relevant to this lawsuit appears below, with citations to exhibits, deposition testimony, discovery responses, affidavits, and other competent summary judgment evidence.

3. In 2018, Garcia worked as one of three assistant principals (APs) at Dueitt Middle School located in Spring, Texas. Between July 21, 2018 and August 9, 2018, Garcia attended his annual military training obligations. **Garcia Decl., Exhibit A**. While Garcia's summer break from school ended on July 25, 2018, Garcia was unable to return until August 10, 2018 due to his military obligations. **Garcia Decl., Exhibit A**. This was communicated in advance to Garcia's supervisor and school administration. **Garcia Decl., Exhibit A**. Dr. Robert Lundin (former Assistant Superintendent of Middle Schools) testified that he first met Garcia in the summer of 2018. **Lundin Dep., Exhibit B, at 30-31**. Lundin promptly focused his attention on Garcia and apparently viewed Garcia's military obligations and absences as something detrimental to the operation of the school. In a memorandum presented by Lundin to Garcia, Lundin stated "[it is] YOUR responsibility to proactively plan to ensure that your decision to participate in military reserve activities does not come at the expense of either the effectiveness of your teachers or the sum of responsibilities borne by your colleagues." **Lundin Dep., Exhibit B, at Ex. 2.** (capitalization in original). Lundin admitted he would not expect an employee taking maternity leave to front-load her work or take any special action prior to beginning her leave. **Lundin Dep., Exhibit B, at 82, 95.** The requirement imposed by Lundin on Garcia to

"proactively plan" for leave was unique to Garcia and was heavily influenced by his military obligations. At an August 13, 2018 meeting with Garcia, Lundin presented Garcia with a "Top 20" plan, something that was unique to both Dueitt Middle School and Garcia. **Lundin Dep., Exhibit B, at 51, 103.** The Defendant's singling out Garcia on account of his servicemember status continued throughout 2018. On November 6, 2018, Lundin held a meeting with Garcia and Dueitt principal Eric Mullens during which time Lundin repeatedly pounded his fists on the table at the meeting while accusing Garcia of "screwing over his colleagues" by being absent on military obligations.[1] **Lundin Dep., Exhibit B, at 80-81, 98.** Lundin prepared a memorandum after the meeting titled "Summary of November 6, 2018 Conference & Formal Statement of Concern." (The "November Memo"). **Lundin Dep., Exhibit B, at Ex. 2.** In the November Memo, Lundin excoriates Garcia and calls into question his "professional judgment." The basis for Lundin's professional judgment concern was apparently Garcia's inquiry to a parent about the feasibility of a student taking an Uber ride share to get home from school when the student's usual pick up was a no-show. **Lundin Dep., Exhibit B, at Ex. 2.** Defendant can point to no district policy or law supporting its contention that this discussion with a parent represented a lack of professional judgment. In fact, Lundin admitted in his deposition that Garcia, in order to facilitate the student's trip home, first contacted the student's parent to inquire about the feasibility of using Uber. **Lundin Dep., Exhibit B, at 80-81**. Garcia left the decision with the parent. When the parent indicated they were not comfortable using Uber, Garcia did not

---

[1] Garcia recorded audio of the November 6, 2018 meeting. **Garcia Decl., Exhibit A**. The audio was played at Dr. Lundin's deposition and he authenticated it. **Lundin Dep., Exhibit B, at 80**. During the recorded meeting, Lundin also stated, while pounding on the table, "this is a wake-up call" and "it is not fair to [burden] your colleagues because of [the military service] choices you made outside of your job." When Garcia politely informed Lundin that he was obligated to military service, Lundin replied, "no, you chose that." Further, Lundin suggested that Garcia needed to perform additional work so that he "doesn't screw over your colleagues because of your choices."

Page **3** of **20**

disregard the parent's wishes. **Lundin Dep., Exhibit B, at 61-62; Exhibit C**. When asked about the District's policy about late pickups (when a parent is a no-show to pick up their student, like in this scenario), Lundin responded "So in those instances, there should be **proactive communication** with the family and/or in the case where there is no pickup, then the Spring ISD police would be contacted." **Lundin Dep., Exhibit B, at 62.** This is precisely what Garcia did, yet his professional judgment was called into question for following District policy. The November Memo became a permanent part of Garcia's employment file.

4. The November Memo also specifically referred to Garcia's planned (and disclosed) military leave in January 2019. **Lundin Dep., Exhibit B, at Ex. 2.** Lundin wrote, "I then asked you how you anticipated the management of your appraisal responsibilities when you are scheduled to be absent for military reserve duties in January. You indicated that you had not developed a contingency plan, and that it was likely that these duties would need to fall on other administrative team members." **Lundin Dep., Exhibit B, at Ex. 2.** Lundin's characterization of this need for a contingency plan conflicts with the deposition of school principal Eric Mullens. In the principal's deposition, Mullens testified that it was not a rare occurrence for an AP or other administrative staff to transfer temporarily from another school to fill-in for an employee on leave. **Mullens Dep., Exhibit D, at 20-23.** Why then, did Lundin emphasize these situations in a disciplinary memo to Garcia in which his professional judgment was called into question? The school district was creating additional work obligations because of Garcia's military status. Moreover, the district was disciplining Garcia over the additional work created by his legal military leave of absence, even though other types of absence were permissible and a system of covering the work was routinely employed.

5. Shortly after the November 2018 meeting, Garcia was informed that he was being reassigned to the AP position over the Dueitt 7th grade class instead of the 8th grade class. **Garcia Decl., Exhibit A**. School principal Mullens testified that this "could have" increased Garcia's workload by resulting in more walk-throughs or teacher evaluations. **Mullens Dep., Exhibit D, at 47-48.** Again, why take an AP who has been singled out to "front load" their work responsibilities due to their military leave and transfer them to a position that would result in more work? Sensing discrimination and a possible "set up" for disciplinary action on account of his military obligations, Garcia retained legal counsel who sent a letter on or about December 5, 2018 informing Defendant of Garcia's concerns and claims under USERRA. **Exhibit E**. In doing so, Garcia engaged in a protected activity.

6. Defendant's discrimination against Garcia accelerated after he informed them that he retained legal counsel to investigate USERRA violations and pursue claims. For example, Garcia was called into a meeting with Pamela Farinas (Ms. Farinas assumed Dr. Lundin's job in early 2019) on March 21, 2019, the same day the school received a parent complaint about Garcia alleging an unprofessional tone. **Garcia Decl., Exhibit A; Def. MSJ Ex. D-1**. Garcia excused himself from the meeting after it became apparent the hastily called meeting was skewed and that it appeared to be an attempt to pressure him out of his position. **Def. MSJ Ex. E-1, E-2**.

7. On May 16, 2019, Garcia was presented with a letter informing him that the Defendant was not going to renew his employment contract, an act that results in termination of employment at the end of the school year. **Exhibit A-4**; **Def. MSJ Ex. E-4**. In support of this decision, the letter accused Garcia of, among other things, being immoral and "possessing, using, or being under the influence" of drugs. **Exhibit A-4**; **Def. MSJ Ex. E-4**. The letter became a

permanent part of Garcia's employment file and the suggestion, without evidence, that these accusations were substantiated would result in permanent jeopardy to Garcia's ability to serve as a military servicemember.[2] **Garcia Decl., Exhibit A**. The drug allegation apparently stems from the statement of a Spring ISD police officer that could not locate "documented information" about being provided a baggie of marijuana from Garcia after Garcia confiscated it from a student. **Exhibit F**. Garcia immediately provided the Defendant a drug test to prove that he does not use drugs. **Exhibit A-2**. Despite having this information, the Defendant school district remained steadfast in its allegations.

8. On May 22, 2019, Garcia filed the instant lawsuit. [Dkt. No. 1].

9. On July 2, 2019, Defendant sent an email to Garcia offering him a contract renewal at a different middle school. **Def. MSJ Ex. E-7**. This inexplicable action, in which the school district offered contract renewal to a person they accused of being immoral, a drug user, and unprofessional, came only after Garcia filed his lawsuit. Contrary to the Defendant's contentions, the contract renewal was not an unconditional offer of employment. The renewal contract required Garcia to, among other things, "represent that any required records or information in [his] employment application [were] true and correct." **Def. MSJ Ex. E-6**. Thus, the conditions imposed on Garcia to continue working at the school district were that he transfer to a different school where he had no rapport with the students or teachers and also confirm that the false allegations made against him were true and correct. **Garcia Decl., Exhibit A**. While the Defendant, in its Motion for Summary Judgment, emphasized that it was Garcia's decision to

---

[2] Garcia's military service often requires a security clearance. Allegations of drug use and immorality in an employment file jeopardize Garcia's ability to receive and maintain a security clearance. By making these false allegations, the Defendant has put Garcia's military career in danger. Defendant's doubling-down and refusal to remove the false statements from Garcia's record constitute harassment and continued discrimination under USERRA. **Garcia Decl., Exhibit A**.

Page **6** of **20**

*leave* the school district or resign, a more complete cite of his deposition testimony provides better context:

> Q. Did you sign your '19-20 contract [the renewal contract offered after suit was filed]?
>
> A. Definitely not, sir.
>
> Q. Why not?
>
> A. I felt scared. I felt afraid of joining an organization that tried to fire me for absurd allegations that were not substantiated. I mean, there is a laundry list of things here that were not substantiated. I never received any -- any counseling for excessive absences and tardies. I never received any counseling other than the one that Mr. Lundin made in November about not doing enough teacher walkthroughs back in November. That was the only one. I didn't receive anything else. And at the end of the school year, as I indicated to you, there is a record that shows I did the most walkthroughs. Here it's insinuating that I wasn't doing my job. I did the most teacher walkthroughs. I did the most discipline, proposed the most discipline with having three months of not being at that school district due to military requirements. I did the most work[] quantitatively --quantitative. You can actually count the amount of walkthroughs, discipline referrals, and you can add it all up. And compared to the other administrators, I did the most, yet here it says I didn't do anything. I did a horrible job. So, I mean, this is loaded with a lot of unsubstantiated things. And, I mean, it even attacked my character, and they were expecting me -- and not even that, they even went as far as saying possessing or under the influence of drugs. And they had the audacity to say welcome back to Spring ISD or stay here with us in Spring ISD. We will put you in another school, and all of this will go away. They had the audacity to do that. Why would anyone in their right mind want to go back to an organization that attacked their character in multiple ways? I mean, if they were going to at least have the decency to say, okay, we did this investigation, we are going to fire you for that. But no. They went full blown, let's destroy the hell out of this guy, let's burn his entire character. And then they were expecting me to come back to the district and -- and believe -- just to make believe nothing happened. And on top of that, they wanted to hold this above my head and not make any addendums or anything -- anything indicating anything documented, hey, by the way, this whole investigation was just completely wrong. Heck, no, I wouldn't want to be in a district that they didn't care about me. They didn't give a crap about me. They wanted to get this lawsuit to go away. So they just wanted to offer me this job thinking, hey, this guy would be stupid enough to take this opportunity, and then they would just fire me later for something else. I felt afraid. I didn't want to go back to a district that would discriminate me, that would continue trying to do witch hunts in the future and potentially hold this over my head in the future. Basically, also, this would make me a slave to the district. I would be forced to

> work with the district forever and do whatever biddings they want. They potentially manipulate me because I can't go to any other district with this on my record in TEC. This was reported to the TEC. I can't go anywhere else. Nobody else is going to want to touch me, which is why I have [been] unemployed this whole time. Why would I accept a job with -- I am sorry if I am getting emotional about this. Why would I accept a job with a district that would hold this over my head? I -- I was afraid, and I would never join an organization like this that would do this to its own employee.

**Def. MSJ Ex. E, Garcia Dep. at page 108-111; Garcia Decl., <u>Exhibit A</u>**.

## II. SUMMARY JUDGMENT EVIDENCE OF THE PARTIES

10. In support of this Response, Plaintiff attaches his declaration with attachments (Exhibit A) and Exhibits B-J. An appendix containing frequently cited caselaw is also attached.

11. In this Response, some of the exhibits filed by Defendant with its Motion for Summary Judgment are incorporated by reference. They are referred to herein as "Def. MSJ Ex __."

## III. ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standard

12. A court shall grant summary judgment if the moving party demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Courts "draw all reasonable inferences in favor of the nonmoving party. However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal citations omitted). Thus, to defeat summary judgment, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986).

**B. Brief History of USERRA and Legislative Purpose**

13. The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq., was adopted in 1994 as the first significant modification in protection of veterans' employment rights in 50 years. *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 544 (5th Cir. 2013) (citing "Veterans' Law Note," ARMY LAWYER 40 (Dec. 1994)). Almost eleven years after the enactment, the Department of Labor adopted regulations pursuant to its statutory authority. 38 U.S.C. § 4331(a); 20 C.F.R. §§ 1002.1-1002.314. USERRA creates a comprehensive statutory scheme to provide civilian reemployment rights for those who serve in the armed forces in order "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." *Smith v. U.S. Postal Serv.*, 540 F.3d 1364, 1366 (Fed. Cir. 2008) (quoting 38 U.S.C. § 4301(a)). The Act also aims "to minimize the disruption to the lives of persons performing service," and "to prohibit discrimination against persons because of their service." *Id.* Section 4311 of USERRA generally prohibits employment discrimination and retaliation against a person who served in a uniformed military service. Sections 4312 and 4313 generally provide rights of reemployment and benefits for a person who was required to be absent from employment for military service. Sections 4311 and 4312 provide distinct causes of action. *Bradberry*, 732 F.3d at 545 (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006)). The statute should be "liberally construed" for the protection and benefit of military service members. *Mayeaux v. Houston Independent School Dist.*, 986 F.Supp.2d 842, 847 (S.D. Tex. Apr. 3, 2014) (citing *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980)). Section 4311 provides that a servicemember "shall not be denied ... reemployment, retention in employment, ... or any benefit of employment"

because of the person's military service. 38 U.S.C. § 4311(a). An employer will violate this prohibition when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. 38 U.S.C. § 4311(c)(1).

14. By referring to a "motivating factor," the statute does not textually suggest that military service be the sole factor. *Mayeaux*, 986 F.Supp.2d at 847 (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) ("By requiring a plaintiff to show that his or her military service was a 'motivating factor' behind an adverse employment action, Congress replaced the Supreme Court's interpretation of USERRA's predecessor statute, under which an employee's military status was required to be 'the sole motivation for the employer's action.'"). A Department of Labor regulation states that a plaintiff "has the burden of proving that a status of activity protected by USERRA was one of the reasons" for the employer's decision. 20 C.F.R. § 1002.22. The employer, though, is not liable under USERRA if it "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1). The regulation elaborates on this provision: "If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway." 20 C.F.R. § 1002.22.

### C. USERRA-Specific Summary Judgment Considerations

15. Circuit courts have been "unanimous in adopting the 'substantial or motivating factor' test, rather than the 'sole motivating factor' test". *Mayeaux*, 986 F.Supp.2d at 847 (citing *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16 (1st Cir. 2007); *see*

*also*, *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 106 (2nd Cir. 1996)). Under this test, "military service is a motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation." *Mayeaux*, 986 F.Supp.2d at 847 (citing *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009)). If "one reason for the employer's actions was [an employee's] 'membership, service, application for service, or obligation for service in the uniformed services,' then that reason was a motivating factor." *Bradberry*, 732 F.3d at 551. If the plaintiff establishes that his or her military service was a motivating factor in her termination, the defendant may nonetheless "escape liability by showing by a preponderance of the evidence, as an affirmative defense, that it would have made the same decision" without regard to the plaintiff's military status. *Mayeaux*, 986 F.Supp.2d at 848 (citing *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F.Supp. 571, 576 (E.D. Tex. 1997); *see also* 38 U.S.C. § 4311(c)(1) (placing burden on employer to prove that action would have been taken in absence of military status). Therefore, in contrast with Title VII cases analyzed under the McDonnell Douglas framework in which the burden remains on the plaintiff to show pretext, in USERRA cases "<u>the burden [is] on the employer to show lack of pretext</u>." *Mayeaux*, 986 F.Supp.2d at 848 (citing *Velazquez-Garcia*, 473 F.3d at 16) (emphasis added). "Obtaining judgment as a matter of law on this type of affirmative defense is an 'uphill climb' for [the defendant if the plaintiff] can demonstrate that a jury could find that [his or] her military absences were a motivating factor in [his or] her termination." *Mayeaux*, 986 F.Supp.2d at 848 (citing *De La Garza v. Brumby*, 2013 WL 754260, at *6 (S.D. Tex. Feb. 27, 2013)). "Once a plaintiff makes that showing, a defendant can only succeed at the summary judgment stage by showing that the same jury that could find

military [service] were a motivating factor would have to find that such [service] was not the motivating factor." *Mayeaux*, 986 F.Supp.2d at 848.

16. Defendant has not met its burden to obtain summary judgment. The very document informing Garcia of his termination (nonrenewal) cites the following specific reasons for nonrenewal, each directly related to or resulting from Garcia's military service and military leave (**Exhibit A-4**):

- Failure to comply with Board policies and procedures, administrative regulations, or official directives from a supervisor or other District official, whether written or oral.

- Neglect of duties, which by example but not by way of limitation, includes excessive tardiness, absences, or leaving the classroom or classes unattended.

- Failure to perform duties as defined in the respective position description.

Accordingly, military service was a motivating factor for an adverse employment action because the Defendant employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation. *See Mayeaux*, 986 F.Supp.2d at 847. This fact question alone precludes summary judgment.

**D. Garcia's *Prima Facie* Case for Discrimination Under USERRA**

17. A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation. 38 U.S.C. § 4311(a). It is undisputed that Garcia is a service member.

18. An employer shall be considered to have engaged in actions prohibited [under 38 U.S.C. § 4311(a)] if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service. 38 U.S.C. § 4311(c)(1).

19. A reasonable factfinder may determine that a plaintiff's military service is a "motivating factor" for: (1) the employer's adverse employment action based on an inference from the employer's discriminatory remark, *Mayeaux*, 986 F. Supp. 2d at 849–50; (2) the employer's inconsistent and shifting explanations for the employment action, *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 842 (E.D. Tex. 2009); (3) the fact that the employer issued adverse actions against an employee immediately after her return from the military service, *Wright v. City of Horn Lake, Miss.*, 63 F. Supp. 3d 651, 656 (N.D. Miss. 2014); or (4) different treatment of similarly situated employees, *Savage v. Fed. Express Corp.*, 856 F.3d 440, 451 (6th Cir. 2017).

20. Here, there is ample evidence that Garcia's membership in the uniformed services was a motivating factor in some or all of the following adverse employment actions he experienced: (i) hostility from Dr. Lundin and discriminatory remarks on more than one occasion including the November 6, 2018 meeting where Lundin pounded his fists on the table and created additional work obligations for Garcia when other employees on leave (such as pregnancy or medical) had no such obligations; (ii) the November Memo in which Lundin described his "deep concerns" about Garcia's "decision to participate in military reserve activities" and that those military activities "[do] not come at the expense of either the

effectiveness of [Garcia's] teachers or the sum of responsibilities borne by [Garcia's] colleagues; (iii) Garcia's transfer to another grade level that resulted in additional work immediately after he was compelled to attend a meeting about balancing his work obligations with his military obligations; (iv) Garcia's "Temporary Reassignment" and being relieved of duty on May 13, 2019; and (v) Garcia's contract nonrenewal which was in effect, a termination of his employment. A factfinder could reasonably determine that any or all of these adverse employment actions were motivated by Garcia's status as a military servicemember.

21. In *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 179 (5th Cir. 2011), the Fifth Circuit held that Congress did not intend to create a hostile-work-environment cause of action under USERRA. The Fifth Circuit reasoned that § 4303(2) did not include "terms, conditions, or privileges of employment" in its definition of "benefit of employment." *Id*. at 177–79. Congress subsequently amended the definition of "benefit of employment" to expressly include "the terms, conditions, or privileges of employment," 38 U.S.C. § 4303(2), but the Fifth Circuit has not examined the issue since then. Some district courts from other circuits have recognized hostile-work-environment claims under USERRA after the amendment. *E.g., Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981 (C.D. Cal. 2013); *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-cv-06500, 2014 WL 4269126, at *7 (N.D. Ill. Aug. 28, 2014). At a minimum, harassment and hostile-work-environment claims require the plaintiff to point to sufficient record evidence that would enable a reasonable jury to find "a causal link between the challenged actions of the employer and the adversely affected 'term, condition, or privilege of employment.'" *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 789 (N.D. Tex. 2013) (adopting the standards under the American Disabilities Act, 42 U.S.C. § 12112, for USERRA hostile-work-environment claims). "The Supreme Court has 'made it clear that conduct must be extreme to amount to a

change in the terms and conditions of employment' establishing a hostile work environment." *McDaniel*, No. 13-cv-06500, at *7 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Courts consider the following factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651–52 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F. 3d 264, 268 (5th Cir. 2002)). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id*. (citing Faragher, 524 U.S. at 787). It is undisputed that Garcia did in fact perceive his work environment to be hostile and abusive. **Def. MSJ Ex. E, Garcia Dep. at page 108-111; Garcia Decl., <u>Exhibit A</u>**. Moreover, the summary judgment evidence shows that each time Garcia returned from a military leave from the Summer of 2018 until his termination, he was faced with a new disciplinary meeting, demotion, reassignment, accusation, or other adverse action such as a removal from duty or nonrenewal. The discriminatory conduct was severe – up to and including accusations that Garcia engaged in immoral conduct, abused drugs, and behaved in an unprofessional manner unbefitting an assistant principal.

22. The Defendant's inconsistent and shifting explanations for its conduct are also suspect. *Martin*, 674 F. Supp. 2d at 842. After providing notice of nonrenewal and effectively terminating his employment, and only after Garcia filed this lawsuit, the Defendant attempted to walk back its discriminatory actions and offered contract renewal, albeit at a different and unfamiliar school. It is inexplicable that a school district, after claiming it had substantiated claims of immoral conduct, drug use, unprofessional conduct, and a litany of other policy

violations would suddenly decide, "let's offer this guy a job." A job in a supervisory capacity – over children. This is, at a minimum, circumstantial evidence that the Defendant's conduct motivated by Garcia's status as a servicemember and his exercise of his rights under USERRA, not a genuine animus-free administration of its employee.

### E. Garcia's *Prima Facie* Case for Retaliation Under USERRA

23. An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services. 38 U.S.C. § 4311(b).

24. An employer shall be considered to have engaged in actions prohibited [under 38 U.S.C. § 4311(b)] if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right. 38 U.S.C. § 4311(c)(2).

25. It is undisputed that Garcia hired legal counsel and that his legal counsel asserted claims under USERRA in December 2018. **Exhibit E**. Accordingly, Garcia engaged in an "action to enforce a protection" afforded him under USERRA and "exercised a right provided

for" under USERRA. It is also undisputed that multiple adverse employment actions, including transfer, suspension, and termination (nonrenewal) occurred *after* Garcia engaged in this protected activity – almost immediately after. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997) (citation omitted); *see also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that a time lapse of four months has been held sufficient to establish a plaintiff's prima facie case of retaliation). Garcia had never been disciplined or written up prior to the November 6, 2018 meeting with Lundin and principal Mullens. **Garcia Decl., Exhibit A**. Lundin and Mullens were both aware of Garcia's protected activity. In response to interrogatories served during discovery, Defendant indicated that "SISD's Chief Human Resources Officer, Deeone McKeithan made the decision to present the recommendation to non-renew Plaintiff's employment contract…" **Exhibit G at 9**. During his deposition, McKeithan stated that he "really [didn't] recall" whether he was made aware of Garcia's claims of USERRA violations. **McKeithan Dep., Exhibit H, at 38.** But he also testified that as the head of HR for the district, he would "for sure" receive the finalized version of that particular investigation. The only exception to this, according to McKeithan, would be if outside counsel or an outside investigator was used to investigate Garcia's USERRA claims. **McKeithan Dep., Exhibit H, at 39**. SISD's **inside counsel** conducted the investigation. Christopher St. James (Assistant General Counsel) is an employee of SISD and provided his findings in response to Garcia's protected activity on Spring ISD letterhead. **Exhibit I**. According to his own testimony, this would mean that McKeithan, the decision maker with regard to nonrenewal, was aware of Garcia's protected activity.

### F. Defendant's Failure to Mitigate Defense Fails

27. Defendant argues in the alternative that Garcia's damages claim should be dismissed because he failed to mitigate his damages. Specifically, Defendant contends that the school district's position reversal and decision to offer contract renewal after initial nonrenewal created an obligation that Garcia accept the renewal, or else he forfeits any damages claim. This argument fails for several reasons. First, in order for an offer of employment (or re-employment) to have this effect, it must be unconditional. The contract renewal offer was conditional. As stated above, it required Garcia to "represent that <u>any</u> required records or information in [his] employment application [were] true and correct." **Def. MSJ Ex. E-7**. This would include all of the allegations concerning immoral conduct, drug use or possession, and unprofessional conduct. This "condition," of accepting these employment file contents as true and correct would have a devastating effect on Garcia's professional and military career. Second, when the employer offers a job other than the one sought or held by the employee, the employer bears the burden of demonstrating that the job offered was substantially equivalent to the job sought or held and that the employee's refusal was unreasonable. *See Smith v. World Ins. Co.*, 38 F.3d 1456, 1465 (8th Cir. 1994) (placing burden on employer to prove existence of offer and unreasonable rejection); *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (placing burden on employer to prove failure to mitigate); *E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir. 1984) (listing substantial equivalence and reasonableness of refusal as issues). As these typically are issues of fact, Defendant must show that no reasonable jury could find for Plaintiff based on the summary judgment evidence. *Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 816 (S.D. Tex. 2006). Defendant cannot meet that burden. Finally, and as shown in Garcia's deposition excerpt above, the Defendant had made life miserable for Garcia – making wild and

unsubstantiated accusations against him and his character.[3] These were acts that resulted in real harm to Garcia including putting his military career in jeopardy. A reasonable jury could conclude based on these events, and the direct negative impact that would result, that Garcia's rejection of the contract renewal at a different school, but still within Spring ISD was reasonable.

## IV. CONCLUSION

For the reasons stated above, and because genuine issues of material fact exist that preclude summary judgment, Defendant's Motion for Summary Judgment should be denied.

Dated: November 27, 2020

Respectfully submitted,

THE VERDE LAW FIRM, PLLC

/s/ Joshua A. Verde
Joshua A. Verde
attorney-in-charge
State Bar No. 24077590
Fed ID No. 1760723
4600 Highway 6 North, Suite 320
Houston, TX 77084
Phone: 713-909-4347
Fax: 713-588-2431
josh@verde-law.com

ATTORNEYS FOR PLAINTIFF
DANIEL ARTURO GARCIA-ASCANIO

---

[3] Another example of this unconscionable conduct includes accusing Garcia of offering students cash in exchange for tips about drug deals when in fact Garcia handed out flyers promoting Crime Stoppers – something the school district promoted on campus and its website. When asked if she thought "an assistant principal providing Crime Stoppers information to students amounts to unprofessional or unethical conduct," HR investigator Nadine Kombe finally admitted, "No." **Kombe Dep., Exhibit J, at 73 & Ex. 8-9.**

Page **19** of **20**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document (with attachments or exhibits, if any) has been served on the persons listed below, via ECF, email, fax, and/or U.S. Mail, on November 27, 2020.

/s/ Joshua A. Verde
Joshua A. Verde

KARCZEWSKI | BRADSHAW | SPALDING
C. Cory Rush
crush@kbslawgroup.com
Melissa M. Goins
mgoins@kbslawgroup.com
3700 Buffalo Speedway, Suite 560
Houston, Texas 77098
Telephone: (713) 993-7066
Facsimile: (888) 726-8374